IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)

| | |
|---|---|
| AEIRAMIQUE GLASS,<br>5105 Edmondson Avenue<br>Baltimore, MD 21229,<br><br>Plaintiff, pro se,<br><br>v.<br><br>CITY OF BALTIMORE,<br>7 E. Redwood Street, 9th Floor<br>Baltimore, MD 21202;<br><br>MAYOR BRANDON SCOTT,<br>in his official and individual capacities,<br>City Hall, 100 N. Holliday Street, Suite 250<br>Baltimore, MD 21202;<br><br>BALTIMORE CITY COUNCIL,<br>100 N. Holliday Street,<br>Baltimore, MD 21202;<br><br>BALTIMORE CITY OFFICE OF EQUITY<br>AND CIVIL RIGHTS,<br>7 E. Redwood Street,<br>Baltimore, MD 21202;<br><br>and<br><br>DANA MOORE,<br>In her official and individual capacities,<br>7 E. Redwood Street,<br>Baltimore, MD 21202;<br><br>Defendants. | Case No. SAG 25 CV 2954 |

USDC- BALTIMORE
'25 SEP 8 PM 3:30

HD
Rcv'd by: AW

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1. Plaintiff Aeiramique Glass brings this civil action, proceeding pro se, to seek redress for unlawful employment practices and violations of her fundamental rights. This case arises

from Defendants' pattern of employment discrimination, retaliation, and political reprisal carried out against Plaintiff in her capacity as Chief of Police Accountability for the City of Baltimore. The claims asserted herein arise under federal and state law, including but not limited to Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, 42 U.S.C. § 1983, and Maryland's statutory protections for whistleblowers.

2. Plaintiff is a cancer survivor and a dedicated public servant who, in reliance on Defendants' representations and promises of permanent appointment as Chief of Police Accountability, relocated from San Diego, California to Baltimore, Maryland in November 2023. In this role, Plaintiff uncovered and reported significant misconduct and violations of law within Baltimore City government. An independent investigation substantiated her disclosures and confirmed her integrity, yet rather than being restored to her rightful position, Plaintiff was met with escalating retaliation, culminating in her unlawful termination on June 28, 2024.

3. By their actions, Defendants engaged in conduct that was discriminatory, retaliatory, and unconstitutional. Specifically, Defendants' conduct: (a) violated Title VII by retaliating against Plaintiff for engaging in protected activity; (b) violated the Americans with Disabilities Act by discriminating against Plaintiff on the basis of her status as a cancer survivor and retaliating after she disclosed her medical condition; (c) violated 42 U.S.C. § 1983 by depriving Plaintiff of rights secured by the First and Fourteenth Amendments, including freedom of speech, equal protection, and due process; and (d) violated Maryland's Whistleblower Protection Act by retaliating against Plaintiff for reporting violations of law, gross mismanagement, and abuse of authority.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under the Constitution and laws of the United States, including Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, and 42 U.S.C. § 1983. Jurisdiction also lies under 28 U.S.C. § 1343(a)(3) and (4), which provide original jurisdiction over actions to redress the deprivation of constitutional and federal statutory rights under color of state law.

5. This Court has supplemental jurisdiction over Plaintiff's related state-law claims, including claims under the Maryland Whistleblower Protection Act and state contract/equitable principles, pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants reside in this District and all or a substantial part of the events or omissions giving rise to the claims occurred in Baltimore, Maryland, within the District of Maryland (Baltimore Division).

7. Plaintiff has fully and timely exhausted her administrative remedies as required by law. On April 23, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, assigned Charge No. 531-2025-03265. On June 9, 2025, the EEOC issued a Dismissal and Notice of Right to Sue, granting Plaintiff the right to pursue her claims in court. This action is filed within ninety (90) days of Plaintiff's receipt of that Notice, and is therefore timely under applicable federal statutes.

## PARTIES

8. Plaintiff Aeiramique Glass is a resident of Baltimore, Maryland. At all times relevant to this action, Plaintiff served as Deputy Chief and subsequently Acting Chief of Police Accountability for the City of Baltimore, and was promised permanent appointment as Chief following a probationary period. Plaintiff is a cancer survivor and is therefore a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.
9. Defendant City of Baltimore ("the City") is a municipal corporation organized under the laws of the State of Maryland. The City was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964 and the ADA, and at all relevant times exercised authority over Plaintiff's employment, benefits, and termination.
10. Defendant Brandon Scott, the duly elected Mayor of Baltimore, is sued in his official and individual capacities. As chief executive of the City, Mayor Scott exercised final policymaking authority with respect to personnel decisions, and at all relevant times acted under color of state law within the meaning of 42 U.S.C. § 1983.
11. Defendant Baltimore City Council is the legislative body of the City and, through its legislative and oversight authority, is a policymaker relevant to the employment policies and practices challenged in this Complaint. The City Council is sued to the extent that its official actions, inactions, or policies contributed to the violations alleged herein.
12. Defendant Baltimore City Office of Equity & Civil Rights ("OECR") is an agency of the City charged with responsibility for enforcing civil rights and accountability within municipal government. At all relevant times, OECR and its leadership exercised supervisory and administrative authority over Plaintiff's employment, and its officials—sued herein in both their official and individual capacities—participated in, directed, or condoned the retaliatory and discriminatory acts against Plaintiff.

## FACTS

13. **November 2023 – Recruitment and Appointment.** Plaintiff was recruited and hired by the City of Baltimore as Deputy Chief of Police Accountability. Within days of her hiring, the sitting Chief resigned, and Plaintiff immediately assumed the duties of Acting Chief of Police Accountability. At the time of her appointment, Plaintiff was expressly assured by City leadership that upon successful completion of her probationary period she would be permanently appointed as Chief of Police Accountability. In reliance on these material representations, Plaintiff uprooted her life and relocated across the country from San Diego, California to Baltimore, Maryland, incurring significant personal and financial costs.

14. **Independent Counsel Issue.** During her tenure, Plaintiff recommended, with the support of the United States Department of Justice, that the Police Accountability Board ("PAB") and Administrative Charging Committee ("ACC") be assigned independent legal counsel to ensure impartiality and compliance with best practices for police accountability. Defendant Dana Moore, then-Director of the Office of Equity & Civil Rights ("OECR"), categorically refused, stating "never." This refusal directly undermined the independence and integrity of the accountability process, placed Plaintiff at odds with OECR leadership, and marked the beginning of a retaliatory campaign against her.
15. **Integrity Bureau Pressure.** Plaintiff was approached by the Deputy Commissioner of Internal Affairs and pressured to instruct the ACC to retract disciplinary charges against high-ranking police officers. After independently reviewing the case files, Plaintiff refused to participate in this misconduct and affirmatively supported the ACC's decision to maintain the charges. Plaintiff's refusal to compromise the integrity of the disciplinary process placed her in direct opposition to senior City officials determined to shield favored officers from accountability.
16. **Staffing and Budget Diversion.** Plaintiff uncovered significant irregularities in staffing and budgeting within the Police Accountability Division ("PAD"). Although the PAD was budgeted for 17 staff positions, only approximately five were actually dedicated to the Division. The remaining PAB-funded lines were improperly diverted to other uses. Plaintiff raised these concerns, which implicated misuse of public funds and mismanagement, further antagonizing OECR leadership.
17. **Targeting and Gaslighting.** Following her disclosures, Plaintiff was subjected to a pattern of targeted retaliation and gaslighting by OECR leadership, including: (a) the "send the report now" incident, during which staff witnessed attempts to mischaracterize her work product; (b) an IT access block that denied Plaintiff access to essential systems; (c) repeated denials of compensatory time and overtime; and (d) retaliatory mistreatment of her staff, including a senior citizen staff member whom Plaintiff defended. Despite directives from OECR leadership to suppress complaints, Plaintiff consistently instructed staff to document irregularities, demonstrating her commitment to accountability.
18. **January 31, 2024 – First Termination.** In direct retaliation for Plaintiff's disclosures and resistance to improper directives, Defendant Moore abruptly terminated Plaintiff without cause or due process.
19. **February 27, 2024 – Reinstatement Request and Disability Disclosure.** Plaintiff submitted an urgent reinstatement request to City leadership, with a deadline of March 1. In that communication, Plaintiff explicitly disclosed her status as a cancer survivor and explained that her unlawful termination had disrupted her access to preventative medical care and insurance coverage. This disclosure constituted protected activity under the Americans with Disabilities Act ("ADA").
20. **March 1, 2024 – Limited Reinstatement.** In response, Plaintiff was reinstated retroactive to February 1, 2024, with back pay. However, Defendants refused to restore her to her rightful Chief role. Instead, Plaintiff was relegated to involuntary paid administrative leave, effectively sidelined without responsibilities, authority, or the opportunity to return to the work she had been hired to perform.
21. **Spring 2024 – Independent Investigation.** An independent investigation commissioned by City leadership produced a 50-page report substantiating Plaintiff's allegations of misconduct. The report recommended Plaintiff's reinstatement to her position and

4

concluded that Defendants Moore and her Chief of Staff had engaged in serious misconduct warranting removal. Both officials were subsequently removed. The independent investigator remains available to testify, further confirming the credibility of Plaintiff's disclosures and her vindication.

22. **April 15, 2024 – PAB Emergency Meeting.** The Police Accountability Board convened an emergency meeting and submitted a formal letter to the Mayor requesting structural reforms and explicitly demanding Plaintiff's reinstatement. Despite this official request, the City refused to return Plaintiff to her position.

23. **May 8, 2024 – Transfer Arrangement.** The Director of the Department of Human Resources sent Plaintiff an email describing a proposed "transfer arrangement," including a title, office space, and return-to-work date. Despite these assurances, Plaintiff remained on indefinite administrative leave and was denied restoration to her Chief role, underscoring the retaliatory nature of Defendants' conduct.

24. **May 13, 2024 – Media Corroboration.** On May 13, 2024, the *Baltimore Sun* published an article confirming discrepancies in PAD staffing and corroborating Plaintiff's concerns regarding the diversion of PAB-funded positions. This independent media coverage validated Plaintiff's prior reports and further demonstrated the accuracy of her disclosures.

25. **June 7, 2024 – Staff Resignation in Protest.** On June 7, 2024, the Deputy Director of PAD resigned in protest, issuing a formal resignation letter that both called for Plaintiff's reinstatement and documented the toxic culture fostered by OECR leadership. This public resignation further confirmed the legitimacy of Plaintiff's concerns and the retaliatory environment.

26. **June 28, 2024 – Second Termination.** Plaintiff was summoned to a meeting at which her legal counsel was expressly barred from attending. At this meeting, Plaintiff was terminated a second time, purportedly "at-will," despite the findings of the independent investigation, repeated calls from staff and board members for her reinstatement, and prior assurances of a transfer arrangement. This second termination occurred immediately following the mayoral election, suggesting that Defendants' actions were motivated not only by retaliation but also by political considerations designed to silence and sideline Plaintiff.

27. **Summary of Retaliation and Discrimination.** Plaintiff's consistent efforts to expose misconduct, her refusal to compromise her professional integrity, and her disclosure of her status as a cancer survivor requiring ongoing preventative care provide direct evidence of retaliation and unlawful discrimination under the ADA. The sequence of events—initial termination, reinstatement without restoration, prolonged administrative leave, and final termination immediately following the mayoral election—demonstrates a clear and escalating pattern of reprisal that violated Title VII, the ADA, § 1983, and Maryland whistleblower law.

## CLAIMS FOR RELIEF

### Count I – Retaliation (Title VII, 42 U.S.C. § 2000e-3)

Plaintiff incorporates by reference all prior paragraphs.

28. Under Title VII, it is unlawful for an employer to discriminate against an employee for opposing any practice made unlawful by the Act or for participating in an investigation, proceeding, or hearing. See 42 U.S.C. § 2000e-3(a).
29. Plaintiff engaged in protected activity when she disclosed discriminatory and unethical practices, resisted improper directives regarding ACC charges, and raised concerns about misuse of budgeted funds and staff mistreatment.
30. In direct retaliation, Defendants subjected Plaintiff to adverse employment actions, including abrupt termination, reinstatement without restoration, prolonged administrative leave, and ultimate termination after the mayoral election.
31. The timing of these actions, the sequence of events, and the direct hostility from OECR leadership demonstrate a causal connection between Plaintiff's protected activity and the adverse actions.
32. As a result, Plaintiff suffered loss of income, loss of professional reputation, emotional distress, and other damages, for which she seeks all remedies available under Title VII.

### Count II – Disability Discrimination and Retaliation (ADA, 42 U.S.C. § 12101 et seq.)

Plaintiff incorporates by reference all prior paragraphs.

33. The ADA prohibits discrimination against a qualified individual on the basis of disability and retaliation against any individual who asserts their rights. See 42 U.S.C. §§ 12112(a), 12203(a).
34. Plaintiff is a cancer survivor, which constitutes a disability under 42 U.S.C. § 12102(1) and the ADA Amendments Act of 2008, because cancer, even in remission, is recognized as a condition substantially limiting major life activities.
35. On February 27, 2024, Plaintiff explicitly disclosed her cancer-survivor status in a written reinstatement request, noting the disruption of her preventative care. This constituted protected activity under the ADA.
36. Defendants failed to accommodate Plaintiff, interfered with her medical coverage, excluded her from her role, and ultimately terminated her in retaliation for her disability disclosure.
37. These actions were willful and malicious, causing Plaintiff significant damages, including lost wages, emotional distress, and disruption of vital healthcare. Plaintiff seeks compensatory and punitive damages, reinstatement or front pay, and injunctive relief under the ADA.

### Count III – First Amendment Retaliation (42 U.S.C. § 1983)

Plaintiff incorporates by reference all prior paragraphs.

38. The First Amendment protects public employees from retaliation for speaking as citizens on matters of public concern. See *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).
39. Plaintiff's reports regarding independent counsel, ACC charges, budget diversion, and staff mistreatment all involved matters of substantial public concern, implicating government integrity, police accountability, and proper use of public funds.

40. Defendants, acting under color of state law, retaliated against Plaintiff by terminating her employment, refusing to restore her to her position, isolating her on administrative leave, and ultimately firing her again post-election.
41. Defendants' actions would deter a reasonable employee from engaging in such protected speech and were motivated substantially by Plaintiff's protected disclosures.
42. Plaintiff seeks declaratory relief, reinstatement or front pay, compensatory damages, and punitive damages against individual defendants.

### Count IV – Equal Protection (42 U.S.C. § 1983)

Plaintiff incorporates by reference all prior paragraphs.

43. The Equal Protection Clause of the Fourteenth Amendment guarantees that no person shall be denied the equal protection of the laws.
44. Plaintiff was treated differently from similarly situated employees who did not disclose medical conditions and who did not engage in whistleblowing activities. She was sidelined and discharged despite vindication by an independent investigation, while others were not subjected to such treatment.
45. This disparate treatment was intentional, lacked any rational basis, and was motivated by discriminatory animus toward Plaintiff's disability and retaliatory animus toward her protected activity.
46. As a result, Plaintiff was deprived of equal protection of the laws, entitling her to relief under 42 U.S.C. § 1983.

### Count V – Due Process (42 U.S.C. § 1983)

Plaintiff incorporates by reference all prior paragraphs.

47. The Due Process Clause of the Fourteenth Amendment protects against deprivations of liberty or property interests without due process of law.
48. Plaintiff had a recognized property interest in her employment, including the promised Chief position and the right to reinstatement following the independent investigation's findings.
49. Defendants deprived Plaintiff of these interests by: (a) reinstating her only on paper and denying restoration to her Chief role; (b) keeping her indefinitely on administrative leave without justification; and (c) terminating her without fair notice, explanation, or opportunity to be heard.
50. Defendants' actions also infringed Plaintiff's liberty interest in her professional reputation by stigmatizing her and preventing her continued public service.
51. These deprivations occurred under color of state law and entitle Plaintiff to damages under 42 U.S.C. § 1983.

### Count VI – Municipal Liability (Monell, 42 U.S.C. § 1983)

Plaintiff incorporates by reference all prior paragraphs.

52. The unconstitutional actions described herein were not isolated incidents but were the direct result of official policies, customs, or decisions of final policymakers within the City of Baltimore.
53. Mayor Brandon Scott, the Baltimore City Council, and OECR leadership all exercised final authority and ratified or condoned the retaliatory conduct.
54. The City failed to prevent or correct known misconduct and instead implemented or tolerated practices of retaliation and discrimination.
55. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the City is directly liable for these constitutional violations.

### Count VII – Maryland Whistleblower Protection Act (Md. Code, State Pers. & Pens. §§ 5-301 et seq.)

Plaintiff incorporates by reference all prior paragraphs.

56. Maryland law prohibits retaliation against employees who disclose violations of law, gross mismanagement, waste of funds, or abuse of authority.
57. Plaintiff made multiple good-faith disclosures of such misconduct, including diversion of PAB funds, denial of independent counsel, improper pressure to retract ACC charges, and workplace mistreatment of staff.
58. In direct retaliation, Defendants terminated Plaintiff twice, refused to restore her to her role, and isolated her on administrative leave.
59. Defendants' conduct violated Maryland's Whistleblower Protection Act, entitling Plaintiff to damages and equitable relief under state law.

### Count VIII – Breach of Contract / Promissory Estoppel (Alternative)

Plaintiff incorporates by reference all prior paragraphs.

60. During her recruitment and throughout her tenure, Defendants made material promises to Plaintiff, including (a) that relocation benefits were unavailable when in fact they were, (b) that she would be permanently appointed as Chief after probation, and (c) that she would be restored to her role following reinstatement and vindication by the independent investigation.
61. Plaintiff relied on these promises to her significant detriment by relocating cross-country, incurring financial and personal costs, and foregoing other opportunities.
62. Defendants' failure to honor these promises constitutes breach of contract. In the alternative, Plaintiff is entitled to relief under promissory estoppel, because her reliance was reasonable and foreseeable, and injustice can only be avoided by enforcement of the promises.
63. Plaintiff seeks damages including relocation costs, lost wages, and other consequential damages.

## DAMAGES

64. As a direct, foreseeable, and proximate result of Defendants' unlawful discrimination, retaliation, and constitutional violations, Plaintiff has suffered and continues to suffer extensive economic, emotional, reputational, and health-related harm. Pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.), 42 U.S.C. § 1983, and Maryland law, Plaintiff seeks the following categories of relief:
65. Front Pay (Future Economic Losses): Reinstatement to her Chief role is impracticable given the hostility, retaliation, and political reprisal she has endured. Accordingly, Plaintiff seeks front pay in lieu of reinstatement to fairly compensate her for the loss of future earnings, benefits, pension contributions, and career advancement opportunities. Based on her salary, benefits, and anticipated tenure, Plaintiff estimates front pay damages at no less than $400,000 and as much as $600,000, covering an expected three to five years of lost career trajectory.
66. Back Pay (Past Economic Losses): Plaintiff seeks back pay for all wages, benefits, and other forms of compensation lost from her initial unlawful termination on January 31, 2024, through her reinstatement, and again from her final unlawful termination on June 28, 2024, continuing through trial. Back pay includes not only base salary but also health insurance, pension contributions, retirement benefits, and other emoluments of employment, together with prejudgment interest. The precise amount will be established at trial based on payroll, benefits, and tax records.
67. Statutory Compensatory and Punitive Damages (Title VII and ADA): Plaintiff seeks the maximum statutory award of $300,000 under 42 U.S.C. § 1981a(b)(3), representing damages for emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life resulting from Defendants' discrimination and retaliation. Plaintiff also seeks punitive damages under the ADA and Title VII to the extent available, in order to punish and deter intentional or reckless disregard for federally protected rights.
68. Uncapped Constitutional Damages (§ 1983 – First and Fourteenth Amendments): For Defendants' retaliation in violation of the First Amendment and deprivation of Equal Protection and Due Process under the Fourteenth Amendment, Plaintiff seeks uncapped compensatory damages in the range of $1,000,000 to $1,500,000. These damages encompass:
    (a) Reputational Harm: Loss of professional standing in Baltimore's public sector and the broader accountability community.
    (b) Career Harm: Foreclosure of advancement opportunities and diminished future employability in government service.
    (c) Emotional Distress: Severe anxiety, depression, humiliation, and trauma from repeated terminations despite vindication by an independent investigation.
    (d) Constitutional Deprivation: The chilling of Plaintiff's protected speech and the deprivation of property and liberty interests without due process of law. Plaintiff further seeks punitive damages against the individual defendants, including the Mayor, OECR leadership, and other

officials, for their willful, malicious, and reckless indifference to her rights.
69. **Special and Consequential Damages (Relocation, Medical, and Ancillary Losses):** Plaintiff uprooted her life and relocated from San Diego, California to Baltimore, Maryland, in reliance on the City's promises. She incurred significant relocation expenses, moving costs, housing expenses, and related financial burdens, conservatively valued at $50,000 or more. Further, because of her status as a cancer survivor, Defendants' actions caused disruptions in her preventative medical care and insurance coverage, placing her at increased health risk and forcing her to incur additional medical expenses. These health-related and financial consequences, together with statutory interest, are valued at $100,000 or more.
70. **Attorneys' Fees and Litigation Costs:** Although Plaintiff presently proceeds pro se, she intends to retain counsel and therefore seeks recovery of attorneys' fees, expert witness fees, and all taxable litigation costs under 42 U.S.C. §§ 2000e-5(k), 12205, and 1988, and applicable Maryland law.
71. **Equitable Relief and Injunction:** Plaintiff seeks appropriate equitable relief, including (a) injunctive orders prohibiting further retaliation by the City of Baltimore; (b) structural reforms to ensure compliance with the ADA, Title VII, and constitutional obligations; and (c) public correction of the false narrative that stigmatized Plaintiff's reputation.
72. **Aggregate Damages:** Plaintiff's combined damages, including economic losses, statutory remedies, constitutional violations, special damages, punitive damages, and attorneys' fees, exceed $3,000,000. Plaintiff anchors her total claim at approximately $3,000,000, with precise amounts to be determined by the jury, subject to the statutory cap on Title VII/ADA compensatory and punitive damages but inclusive of uncapped § 1983 and state law remedies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Aeiramique Glass, proceeding pro se, respectfully requests that this Court enter judgment in her favor and against all Defendants, jointly and severally, and grant the following relief to the fullest extent permitted by law:

**a. Declaratory Relief.** A declaration that Defendants' acts, omissions, policies, and practices violated Plaintiff's rights under:

- Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.;
- The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.;
- 42 U.S.C. § 1983, by depriving Plaintiff of her rights under the First and Fourteenth Amendments; and
- Maryland's Whistleblower Protection Act.

**b. Equitable Relief – Reinstatement or Front Pay.** An order directing Defendants to restore Plaintiff to her rightful position as Chief of Police Accountability with all attendant seniority, authority, salary, and benefits. In the alternative, if reinstatement is impracticable due to hostility, political reprisal, or futility, an award of front pay for a sufficient duration to make Plaintiff whole, including projected salary increases, pension accruals, and career progression.

c. **Back Pay and Benefits.** An award of back pay for all lost wages, benefits, retirement contributions, health insurance, and other employment emoluments from Plaintiff's unlawful termination(s) through the date of judgment, together with prejudgment interest to ensure complete economic restitution.

d. **Compensatory Damages.** An award of compensatory damages, to the maximum extent permitted by law, for:

- Economic losses, including relocation costs and medical expenses incurred due to Defendants' unlawful conduct;
- Emotional distress, including mental anguish, humiliation, loss of enjoyment of life, and trauma;
- Reputational harm, including loss of professional standing and diminished future employability; and
- Health impacts, including disruption of Plaintiff's preventative cancer care.

e. **Punitive Damages.** An award of punitive damages against the individual Defendants, including Mayor Scott and OECR officials, to punish their willful, malicious, and reckless indifference to Plaintiff's federally protected rights and to deter similar unlawful conduct by public officials in the future.

f. **Injunctive and Structural Relief.** Entry of broad injunctive relief requiring the City of Baltimore and its agencies to:

- Cease and desist from further acts of retaliation or discrimination against Plaintiff or others;
- Implement reforms, policies, and oversight mechanisms ensuring compliance with Title VII, the ADA, the First and Fourteenth Amendments, and Maryland whistleblower law;
- Provide training and monitoring for City officials and managers concerning employee rights and whistleblower protections;
- Establish independent oversight within OECR and the Police Accountability Division to prevent recurrence of misconduct.

g. **Attorneys' Fees and Costs.** An award of Plaintiff's reasonable attorneys' fees, expert witness fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. §§ 2000e-5(k), 12205, and 1988, and applicable Maryland law, in recognition that Plaintiff intends to retain counsel as the case progresses.

h. **Interest.** An award of both pre-judgment interest and post-judgment interest at the maximum legal rate to compensate Plaintiff fully for the time value of money wrongfully withheld.

i. **Additional Equitable Relief.** Such other equitable remedies as the Court deems just, including but not limited to:

- Expungement of Plaintiff's personnel record of any references to adverse actions;
- Restoration of retirement service credit and eligibility;
- Public correction of the record to clear Plaintiff's professional reputation.

j. **General Relief.** Such other and further relief, both legal and equitable, as this Court deems just, proper, and necessary to fully vindicate Plaintiff's rights, deter future violations, and serve the public interest in accountability, transparency, and protection of whistleblowers within government service.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, 42 U.S.C. § 1983, and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable. Plaintiff respectfully requests that a jury of her peers determine liability and assess all available damages, both compensatory and punitive, arising from Defendants' unlawful conduct.

**Respectfully submitted,**

Aeiramique Glass
5105 Edmondson Avenue
Baltimore, MD 21229
Tel: (619) 776-1687
Email: meekaglass@gmail.com
*Plaintiff, Pro Se*