IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| AEIRAMIQUE GLASS | * | |
| Plaintiff, | * | |
| | * | Civil Case No.: SAG-25-02954 |
| v. | * | |
| CITY OF BALTIMORE, *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Aeiramique Glass ("Plaintiff") brings this action against the City of Baltimore, the Baltimore City Council, the Baltimore City Office of Equity and Civil Rights ("OECR"),[1] Mayor Brandon Scott, and Dana Moore (collectively, "Defendants") for claims arising out of her employment with the City. ECF 1. Defendants have now filed a motion to dismiss, ECF 10, which Plaintiff opposed, ECF 19. Defendants then filed a reply. ECF 22. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, the motion to dismiss will be granted.

## I.    BACKGROUND

The following facts are derived from Plaintiff's complaint, ECF 1, and are assumed to be true for purposes of this motion.

---

[1] Although the parties agree that the complaint erroneously names the City of Baltimore, the Baltimore City Council, and the Baltimore City OECR, Defendants stated that they would treat the complaint as bringing claims against the correct entity, the Mayor and City Council of Baltimore (the "City"). *See* ECF 10 at 1 n.1. This Court will do so as well.

In November, 2023, the City recruited and hired Plaintiff to serve as its Deputy Chief of Police Accountability. *Id.* ¶ 13. Shortly after her hiring, the then-Chief of Police Accountability resigned, and Plaintiff began serving as the Acting Chief of Police Accountability. *Id.* "Plaintiff was expressly assured by City leadership that upon successful completion of her probationary period she would be permanently appointed as Chief of Police Accountability." *Id.* In reliance upon that representation, Plaintiff relocated from California to Baltimore. *Id.*

While in her position, Plaintiff recommended that the Police Accountability Board ("PAB") and Administrative Charging Committee ("ACC") be assigned independent legal counsel "to ensure impartiality and compliance with best practices for police accountability." *Id.* ¶ 14. Moore, then-Director of the OECR, refused and stated "never." *Id.*

At another point during Plaintiff's City employment, the Deputy Commissioner of Internal Affairs "pressured" Plaintiff to instruct the ACC to retract disciplinary charges against certain high-ranking police officers. *Id.* ¶ 15. After Plaintiff independently reviewed the pertinent case files, she refused to so instruct the ACC and supported the ACC's charging decisions. *Id.*

Plaintiff also uncovered staffing and budget irregularities within the Police Accountability Division ("PAD"). *Id.* ¶ 16. Specifically, the PAD was budgeted seventeen staff positions, but all except five of those positions were diverted to other uses. *Id.* Plaintiff reported concerns about what she uncovered. *Id.*

Following these events, the OECR began attempts at "retaliation" against Plaintiff, including mischaracterizing her work product, blocking her access to information technology systems, denying her compensatory time and overtime, and mistreating her staff. *Id.* ¶ 17. Plaintiff defended one of these staff members who suffered mistreatment. *Id.*

2

On January 31, 2024, Moore terminated Plaintiff's employment. *Id.* ¶ 18. Approximately four weeks later, Plaintiff filed "an urgent reinstatement request to City leadership." *Id.* ¶ 19. In her request, she disclosed that she is a cancer survivor and that her termination had disrupted her access to insurance coverage and preventive care. *Id.* In response to Plaintiff's request, the City reinstated her to paid administrative leave, retroactive to February 1, with back pay. *Id.* ¶ 20.

During the spring of 2024, an independent investigation commissioned by City leadership released a report that substantiated the misconduct identified by Plaintiff, recommended her reinstatement to her full responsibilities, and concluded that Moore and Moore's chief of staff had engaged in misconduct that warranted removal. *Id.* ¶ 21. Moore and her chief of staff were subsequently removed. *Id.* The *Baltimore Sun* also published an article reporting the staffing discrepancies that Plaintiff had identified. *Id.* ¶ 24. Additionally, the PAB sent a letter to Scott demanding Plaintiff's reinstatement to her full responsibilities as well as structural reforms. *Id.* ¶ 22. Shortly thereafter, the Deputy Director of the PAD resigned by way of a letter that encouraged Plaintiff's reinstatement to her full responsibilities and complained of "the toxic culture fostered by OECR leadership." *Id.* ¶ 25.

While Plaintiff was on paid administrative leave, the Director of the Department of Human Resources proposed a "transfer arrangement" to Plaintiff. *Id.* ¶ 23. Notwithstanding that proposal, in June, 2024, immediately following the mayoral election, Plaintiff was terminated again at a meeting that her counsel was expressly barred from attending. *Id.* ¶ 26.

## II.  LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a

defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

## III.  DISCUSSION

Plaintiff's complaint contains eight claims. *See generally* ECF 1. Count I alleges retaliation under Title VII. *Id.* ¶¶ 28–32. Count II alleges discrimination and retaliation under the Americans with Disabilities Act ("ADA"). *Id.* ¶¶ 33–37. Count III alleges First Amendment retaliation pursuant to 42 U.S.C. § 1983. *Id.* ¶¶ 38–42. Count IV alleges an equal protection violation pursuant to § 1983. *Id.* ¶¶ 43–46. Count V alleges a due process violation pursuant to § 1983. *Id.* ¶¶ 47–51. Count VI alleges municipal liability pursuant to § 1983 and *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). *Id.* ¶¶ 52–55. Count VII alleges a violation of the Maryland Whistleblower Protection Act. *Id.* ¶¶ 56–59. Finally, Count VIII alleges, in the alternative, breach of contract or promissory estoppel. *Id.* ¶¶ 60–63. In her opposition to the motion to dismiss,

4

however, Plaintiff has conceded that her Title VII retaliation claim and her breach of contract claim are not viable as currently pled. *See* ECF 19-2 at 11. This Court will address the remaining claims in turn.

### A. ADA Claims

Plaintiff alleges both discrimination, in the form of failure to accommodate, and retaliation under the ADA. Under the ADA, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under this provision includes failure to make reasonable accommodations for an individual with a disability. § 12112(b)(5)(A). But Plaintiff fails to allege how Defendants failed to accommodate her disability as a cancer survivor undergoing preventive care. In fact, the complaint alleges only that Defendants reinstated her upon notice of her disability and her termination's impact on her preventive care. She has therefore failed to plead a discrimination claim based on failure to accommodate.

As for her retaliation claim, the ADA provides, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To state a claim for ADA retaliation, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered an adverse action, and (3) a causal link between the protected conduct and adverse action exists. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Here, Plaintiff has alleged that her reinstatement request, which disclosed that she is a cancer survivor and that her termination had interrupted her preventive care, resulted in her reinstatement. And even though

Plaintiff was reinstated to paid administrative leave, rather than to her full responsibilities, without factual allegations suggesting that she would have been reinstated to her full responsibilities absent the disclosure, Plaintiff's complaint suggests that that disclosure caused Defendants to place her in a *better* position than the one in which she had been prior to the disclosure. She has therefore failed to plead that Defendants retaliated against her for her disclosure of her disability.

Accordingly, Count II will be dismissed.

### B. First Amendment Retaliation Claim

Plaintiff alleges that Defendants retaliated against her for her speech in violation of the First Amendment. Specifically, Plaintiff identifies four instances of her speech that she alleges resulted in Defendants' retaliation: (1) her recommendation that the PAB and ACC be assigned independent counsel, (2) her refusal to instruct the ACC to retract charges against certain officers, (3) her reported concerns regarding staffing and budget irregularities in the PAD, and (4) her defense of a staff member who had suffered retaliatory mistreatment.

Under certain circumstances, the dismissal of public employees for their speech violates the First Amendment. *See Pickering v. Board of Education*, 391 U.S. 563, 565 (1968). Such a violation occurs when (1) the employee "was speaking as a citizen upon a matter of public concern," (2) the employee's interest in speaking on that matter outweighed the government's interest in the efficient provision of public services, and (3) the speech was "a substantial factor" in the dismissal decision. *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998). The first element requires that the employee spoke as a citizen, rather than pursuant to her official duties, and that the speech concerned matters "of interest to the community," rather than "internal office affairs." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017).

To determine whether an individual spoke as a citizen or pursuant to her official duties, a court must "engage in a 'practical' inquiry into the employee's 'daily professional activities.'" *Hunter v. Town of Mocksville*, 789 F.3d 389, 397 (4th Cir. 2015) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 422, 424 (2006)). The "critical question" in this inquiry is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

Speech about "an issue of social, political, or other interest to a community" constitutes speech on a matter of public concern, whereas speech about "personal complaints and grievances about conditions of employment" does not. *Durham v. Jones*, 737 F.3d 291, 299–300 (4th Cir. 2013) (first quoting *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004); and then quoting *Campbell v. Galloway*, 483 F.3d 258, 267 (4th Cir. 2007)). The Supreme Court has described "corruption in a public program and misuse of state funds" as "obviously involv[ing] a matter of significant public concern." *Lane*, 573 U.S. at 241. The context of the speech, however, need not be public; rather, the First Amendment may apply to speech that an employee makes in private to her employer. *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16 (1979); *see also Hunter*, 789 F.3d at 402 (concluding that First Amendment applied notwithstanding that plaintiffs reported misconduct to government officials rather than media).

Plaintiff has failed to satisfy this first element of her claim. Unlike the other speech that Plaintiff identifies, her defense of a staff member who had suffered retaliatory mistreatment at work constitutes speech about the conditions of employment and internal office affairs that the First Amendment does not reach. As to her recommendation regarding the assignment of independent counsel, refusal to instruct the ACC to retract charges, and reports regarding staffing and budget irregularities, even assuming that all of this speech involved matters of public concern,

this Court cannot determine, based on the limited facts alleged, whether Plaintiff engaged in this speech in the course of her official duties. The complaint contains little information regarding Plaintiff's position or her "daily professional activities." Moreover, the complaint does not describe the context or audience of Plaintiff's reports regarding staffing and budget irregularities. Without additional factual allegations describing Plaintiff's official duties and the circumstances in which Plaintiff engaged in some of the purportedly protected speech, Plaintiff has failed to state her First Amendment claim. Count III will therefore be dismissed.

### C. Equal Protection Claim

To state an equal protection claim, a plaintiff must allege that she has been treated differently from other similarly situated individuals because of purposeful discrimination. *Desper v. Clarke*, 1 F.4th 236, 248 (4th Cir. 2021). Plaintiff alleges that she "was treated differently from similarly situated employees who did not disclose medical conditions and who did not engage in whistleblowing activities." ECF 1 ¶ 44. This conclusory allegation fails to sufficiently plead Plaintiff's claim. *See Desper*, 1 F.4th at 249 (dismissing equal protection claim because plaintiff had failed to plead factual allegations suggesting that he was similarly situated to other individuals treated differently); *see also Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021) (same). Here, this Court cannot evaluate whether the other employees were, in fact, similarly situated to Plaintiff because she does not allege any facts to support her conclusory allegation that they were. This Court therefore must dismiss Count IV.

### D. Due Process Claim and *Monell* Claim

In her due process claim, Plaintiff alleges both property and liberty interests of which the City deprived her without due process. Specifically, Plaintiff alleges that she had a "property interest in her employment, including the promised Chief position and the right to reinstatement

following the independent investigation's findings" as well as a "liberty interest in her professional reputation." ECF 1 ¶¶ 48, 50.

The Due Process Clause of the Fourteenth Amendment requires due process before deprivation of life, liberty, or property. U.S. Const. amend. XIV, § 1. An individual has a protected property interest in continued public employment only if some independent source of law creates a "legitimate claim of entitlement" to continuation of the employment. *Bd. of Regents v. Roth*, 408 U.S. 564, 576–77 (4th Cir. 1972). In Maryland, the default employment arrangement is at will. *Adler v. Am. Standard Corp.*, 291 Md. 31 (1981). A public employee serving "at the will and pleasure" of her public employer generally does not possess an entitlement to continued employment. *Jenkins v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir. 1990). Probationary employees similarly lack such entitlement. *Sciolino v. City of Newport News*, 480 F.3d 642, 645 (4th Cir. 2007).

Plaintiff has alleged no facts suggesting that her employment was not "at will" at the times that she was terminated. In fact, it appears that Plaintiff was a probationary employee at the times of her terminations. Plaintiff alleges that she "was expressly assured by City leadership that upon successful completion of her probationary period she would be permanently appointed as Chief of Police Accountability." ECF 1 ¶ 13. Plaintiff does not allege that she ever successfully completed this probationary period before she was terminated approximately two months after her hiring or during her period of administrative leave, and the fact that she was not permanently appointed to the Chief position suggests that she did not. Furthermore, Plaintiff offers no support for her assertion that the independent investigation's findings, even if recommending that Plaintiff be reinstated to her position, created an entitlement to that position.

The Due Process Clause also applies when a public employer publicly announces the reasons for an employee's discharge, implicating the employee's liberty interest in her reputation to seek other employment. *Sciolino*, 480 F.3d at 645–46. To state this type of claim, the plaintiff must allege that the reasons for her termination (1) stigmatized her reputation, (2) were made public by her employer, (3) were made in conjunction with her termination, and (4) were false. *Id.* at 646. Plaintiff does not allege what reasons for her termination, if any, the City made public. This Court therefore cannot evaluate whether the reasons stigmatized her reputation or were false. Accordingly, Plaintiff has failed to state a due process claim, and Count V will be dismissed.

Because Plaintiff has failed to state any of her § 1983 claims, her *Monell* claim also fails. Count VI will therefore be dismissed.

### E. Maryland Whistleblower Protection Act Claim

The Maryland Whistleblower Protection Act, by its own terms, applies to "all employees and State employees who are applicants for positions in the Executive Branch of State government, including a unit with an independent personnel system." Md. Code Ann., State Pers. & Pens. § 5-301. It does not apply to municipal employees, such as Plaintiff. *See Montgomery Cnty. Pub. Schs. v. Donlon*, 233 Md. App. 646, 667 (2017) (concluding that § 5-301 applies only to state executive branch employees); *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 738 (D. Md. 2013) (noting that § 5-301 does not apply to county sheriffs in Maryland because they are not employees of the state's executive branch); *Tongue v. Scott*, Civ. No. DKC 2005-1782, 2006 WL 8457028, at *5 (D. Md. Aug. 17, 2006) (dismissing § 5-301 claim by municipal employee). Because this statute does not apply to Plaintiff, Count VII must be dismissed.

### F. Promissory Estoppel Claim

Finally, Plaintiff alleges promissory estoppel, which requires (1) "a clear and definite promise," (2) "where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee," (3) "which does induce actual and reasonable action or forbearance by the promisee," and (4) "causes a detriment which can only be avoided by the enforcement of the promise." *Pavel Enters., Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166 (1996).

Plaintiff again relies on the promise that she would be permanently appointed Chief following successful completion of the probationary period. Again, the complaint does not allege that Plaintiff ever completed this probationary period. Given this condition precedent, this Court cannot conclude that this promise was "definite." Moreover, a promise by an at-will employer to take some employment action in the future is generally insufficient as matter of law to state a claim for promissory estoppel. *Doe v. Catholic Relief Servs.*, 529 F. Supp. 3d 440, 453 (D. Md. 2021). Thus, Count VIII must be dismissed.

## IV.  CONCLUSION

For the reasons stated above, the motion to dismiss, ECF 10, will be granted. Plaintiff's claims are dismissed without prejudice. A separate Order follows, which will close the case, subject to reopening should Plaintiff file a motion for leave to amend her claims within thirty days. Any proposed amended complaint should properly identify the City defendant.


Dated: May 29, 2026                                            _____/s/_____
                                                             Stephanie A. Gallagher
                                                             United States District Judge


11